# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA
# ERIE DIVISION

| | |
|---|---|
| **W.R. CASE & SONS CUTLERY COMPANY,** a Pennsylvania Corporation, and **CASEMARK, INC.**, a Delaware Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> **ROADSIDEIMPORTS, LLC,** a Colorado Limited Liability Company, <br><br> Defendant. | Civil Action No. 17-106 Erie |

## COMPLAINT FOR TRADEMARK INFRINGEMENT

For their Complaint against defendant RoadsideImports, LLC ("Roadside" or "Defendant"), plaintiffs W.R. Case & Sons Cutlery Company ("Case") and CaseMark, Inc. ("CaseMark") (collectively "Plaintiffs") allege as follows:

### INTRODUCTION

1. Case is an American manufacturer of premium, hand-crafted knives often passed down for generations. With a history of over 100 years, the Bradford, Pennsylvania based company's offerings cover a wide range of product categories – from traditional folding pocket knives (such as the one at right) and fixed blade sporting knives, to limited



*Case CopperLock® Pocket Knife*

production commemoratives and collectables. CaseMark owns the trademarks at issue here and exclusively licenses them to Case.

2. Given its long history and reputation for premium knives, the Case name and other brands are key to its business. CaseMark invests substantial effort to protect its brands by registering them with the U.S. Patent and Trademark Officer ("PTO") – CaseMark presently has almost sixty federally registered trademarks – and in policing the trademarks against infringement and other unauthorized uses.

3. This action is compelled by Roadside's continuing infringement of multiple Case trademarks. In particular, through its www.autoknife.com website, Roadside is selling Case knives that have been materially altered to create "automatic" (i.e., switchblade) knives. The unauthorized resale of a materially altered trademarked product constitutes trademark infringement.

4. Switchblade or automatic knives (the terms are used interchangeably) are illegal in about twenty states – including in Delaware, where CaseMark in incorporated and has its principal place of business, and in Pennsylvania, where Case is incorporated and has its principal place of business. In addition, federal law prohibits the sale of switchblade knives in interstate commerce, which Roadside does through its website at www.autoknife.com. *See* 15 U.S.C. § 1242 ("Whoever knowingly introduces, or manufactures for introduction, into interstate commerce, or transports or distributes in interstate commerce, any switchblade knife, shall be fined not more than $2,000 or imprisoned not more than five years, or both.").

5. Roadside's continuing activities lessen the distinctiveness of Case's brands and trades on the goodwill in CaseMark's trademarks. Given that switchblades are illegal in many states and cannot be sold across state lines under federal law, Roadside's sale of Case knives that have been materially altered into switchblades further tarnishes the goodwill in the trademarks-in-suit because of their association with illegal items and activity.

6. On learning of such infringing activity, Plaintiffs tried, on an amicable basis, to resolve Roadside's unlawful, infringing activities. Roadside rejected those attempts, compelling this action.

### THE PARTIES

7. Case is a corporation organized under the laws of Pennsylvania, with a principal place of business located at 50 Owens Way, Bradford, Pennsylvania 16701.

8. CaseMark is a corporation organized under the laws of Delaware, with a principal place of business located at 1105 North Market Street, Suite 1300, Wilmington, Delaware 19801.

9. Roadside is a Colorado limited liability company with a principal place of business at 830 Sharis Court, Bennett, Colorado 80102.

### JURISDICTION AND VENUE

10. This is an action for trademark infringement arising under the Lanham Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq.

11. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

### BACKGROUND

*Case's Distinctive Knives*

13. Case's history began in 1889 when William Russell ("W.R.") and Jean, John, and Andrew Case ("The Case Brothers") began fashioning knives and selling them along a wagon trail in upstate New York. W.R.'s son, John Russell ("Russ") Case, a former salesman for the Case Brothers brand, launched W.R. Case & Sons around the turn of the 20th century. W.R.

acted as his son's consultant, helping to stabilize the company's early finances while building a reputation as a dependable supplier of high-quality cutlery.

14.     Today, Case is owned by Zippo Manufacturing Company, makers of the world-famous Zippo® windproof lighter, another family-owned business based in Bradford. Case's original knife concepts and manufacturing methods have been recognized with awards and features from major print publications, international trade organizations and events, broadcast television shows and major motion pictures. CaseMark was formed in 2001 for the purpose of owning, maintaining, licensing to Case, and enforcing the various Case trademarks.

15.     Case has employed a unique tang stamp dating system since the very early days of its history, helping make the CASE XX® brand one of the world's favorite collectable brands. The Case Collectors Club, with about 19,000 active members, is the world's largest known knife collecting association.

16.     Case's commitment to quality is evidenced by the many pairs of hands needed to create just one knife. Case knives start with carefully shaped handles made from a wide range of genuine materials, such as cattle bone, stag antler, buffalo horn, mother-of-pearl, exotic woods, and stones. Brass, nickel, and silver components highlight each form, bringing together knives that are both beautiful and able to stand the tests of time and use.

17.     Case's pioneering spirit is shown in several of its original knife patterns, such as its CopperLock®, Baby Butterbean®, Cheetah®, Sod Buster®, XX-Changer®, Baby Doc, Kodiak Hunter®, Tiny Trapper, Mako®, RussLock®, Hunter Trapper, Tiny Muskrat, Jr. Scout, Sway Back, and Hobo®.

18.     The Case brand's popularity is underscored by the knives it manufactures under licensing agreements with popular American icons, such as Harley-Davidson, Ford Motor

Company, United States Marine Corps, United States Army, United States Navy, John Deere, Boy Scouts of America, Ducks Unlimited, John Wayne (Wayne Enterprises) and National Wild Turkey Federation. (Two of the infringing products at issue feature also Harley-Davidson-licensed trademarks.)

19. To maintain its association with premium quality products, Case manages where its knives are sold. Case knives largely sell through its authorized dealer network of hardware and home improvement retailers, specialty cutlery shops, fashion and accessory shops, catalog retailers, and others.

### *CaseMark Owns Extensive Rights in the Asserted Trademarks*

20. CaseMark owns all right, title and interest in and to a number of registered U.S. trademarks. Roadside infringes at least the following four (the "Asserted Trademarks"), each of which is exclusively licensed to Case:

| Trademark | U.S. Reg. No. | Reg. Date | First Use in Commerce |
|---|---|---|---|
| CASE XX (logo) | 0541284 | Apr. 24, 1951 | Feb. 1, 1895 |
| COPPERLOCK | 2250057 | June 1, 1999 | Dec. 14, 1998 |
| CASE | 2729013 | June 24, 2003 | Feb. 1, 1895 |
| CASE XX (oval logo) | 2387388 | Sept. 19, 2000 | Jan. 01, 1995 |

21. At all times relevant to this action, Case has distributed, advertised and sold in U.S. commerce its knives under each Asserted Trademark. CaseMark also has common law rights to these marks. At all times relevant to this action, Case has extensively advertised and

- 5 -

promoted the Asserted Trademarks and products branded with the Asserted Trademarks in the United States and throughout the world. As detailed above, major print publications, international trade organizations and events, broadcast television shows and major motion pictures have recognized Case's original knife concepts and manufacturing methods or featured Case's products.

22. By virtue of Case's domestic and international sales, advertising and promotion, and press coverage, Plaintiffs enjoy valuable goodwill in the Asserted Trademarks.

*Roadside Sells Infringing Case Knives*

23. Through its www.autoknife.com website, Roadside offers for sale at least the following infringing products (the "Accused Knives"):





CASE Custom Made Copperlock Dark Horn Lockback Automatic Switchblade Flick Knife
SKU: CASE-DARKHORN-COPPERLOCK-CA16066-160
(0.0 on 0)
Price: $349.99
Add To Cart

CASE Custom Made HARLEY-DAVIDSON Motorcycles Copperlock Jigged Dark Horn Lockback Automatic Switchblade Flick Knife
SKU: CASE-HARLEY-DAVIDSON-COPPERLOCK- JIGGED-CA52076-165
(0.0 on 0)
Price: $399.99
Add To Cart

CASE Custom Made HARLEY-DAVIDSON Motorcycles Copperlock Stag Horn Lockback Automatic Switchblade Flick Knife
SKU: CASE-HARLEY-DAVIDSON-COPPERLOCK- STAG-CA52076-165
(0.0 on 0)
Price: $399.99
Add To Cart

https://autoknife.com/index.php?l=product_list&m=28



*Close up of blade and tang of knife at above right*

24. Case does not make or sell switchblade knives. Each of the Accused Knives above is an authentic Case knife that, after its initial sale, was materially altered to operate as a switchblade.

25. By selling materially altered and thus infringing Case knives, Roadside is sowing confusion about whether Case made the Accused Knives, authorized their manufacture, and/or whether they are otherwise associated with or sponsored or licensed by Case. Roadside is accordingly trading on Plaintiffs' goodwill in its Asserted Trademarks.

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement - 15 U.S.C. § 1114(1)(a))

26. Plaintiffs reallege and incorporate by reference paragraphs 1 through 25 above.

27. By offering the Accused Knives for sale through at least its www.autoknife.com website, Roadside is impermissibly using the Asserted Trademarks in U.S. commerce. As alleged above, such use is likely to (a) cause confusion or mistake among both actual and potential purchasers, and/or (b) deceive both actual and potential purchasers.

28. Roadside's use of the Asserted Trademarks is calculated to trade on Plaintiffs' goodwill in those trademarks.

- 7 -

29. Roadside is thus liable under 15 U.S.C. § 1114(1)(a) for its past and continuing infringement of the Asserted Trademarks.

30. Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to recover their actual damages and/or Roadside's profits from sales of any other materially altered Case knives – which are unjust and illicit gains – as well as the costs of this action.

31. As the facts alleged above reflect, Roadside's use of the Asserted Trademarks was and is intentional and in bad faith. Roadside's intent to infringe is demonstrated by, among other things, its rejection of Plaintiffs' efforts to resolve Roadside's infringement in an amicable manner. Rather than accept responsibility for its actions, Roadside's counsel responded by contending that Plaintiffs' cease-and-desist letter was as part of a "conspiracy" of knife manufacturers to "abuse" the courts and put Roadside out of business:

> More concerning from my clients' position is that there seems to be a pattern of behavior by knife manufacturers to use, or potentially abuse, the legal system to somehow punish my clients and attempt to drive them from business. Notably, my clients are concerned that they are the subject of several lawsuits brought by a collective of manufacturers. In 2011, Benchmade Knife Company, Inc. brought a suit, Case No 1:2011-cv00018, and in 2015, Microtech Knives, Inc., brought a suit, Case No. 1:15-cv-00140-BR. One might suggest that these suits would support the proposition that my clients are engaged in interfering with protected rights. But, to the contrary, in the first case, my clients were not prepared and did not know their rights, and in the second case, subject to confidentiality, it was resolved mutually. Thus, my clients now suspect, when yet a third manufacturer complains of alleged conduct that perhaps a civil conspiracy may now exist by and between Benchmade, Microtech and now with Case?

Roadside's conspiracy theory is nonsense. Plaintiffs have not communicated with any other knife manufacturer about Roadside or its principal and owner, Jonathan Benson. Rather, the only reasonable conclusion that may be drawn from different knife manufacturers suing it for trademark infringement is Roadside's apparent belief that it is not bound by U.S. trademark law.

- 8 -

32. Roadside's intentional infringement and bad faith justify an award of enhanced damages under 15 U.S.C. § 1117(b) in an amount up to three times actual damages.

33. Because this is an exceptional case under 15 U.S.C. § 1117(a)(3), Plaintiffs should be awarded their reasonable attorneys' fees.

34. In addition, because Plaintiffs' remedies under 15 U.S.C. § 1117(a) are not sufficient to fully protect their continuing interest in preserving the Asserted Trademarks against future infringements by Roadside, Plaintiffs are entitled to an injunction against Roadside's future use of the Asserted Trademarks and use by those with whom Roadside is in active concert. Plaintiffs are also entitled to an injunction prohibiting any other infringing uses by Roadside.

## SECOND CLAIM FOR RELIEF

**(False or Misleading Descriptions or Representations of Fact - 15 U.S.C. § 1125(a))**

35. Plaintiffs reallege and incorporate by reference paragraphs 1 through 25 and 31 above.

36. By making and selling the Accused Knives, Roadside is impermissibly selling, in U.S. commerce, Case's trademarked products in materially altered form. As alleged above, such use is likely to (a) cause confusion or mistake among both actual and potential purchasers, and/or (b) deceive both actual and potential purchasers, as to the origin, sponsorship, or approval of the Accused Knives sold by Roadside and/or Roadside's commercial activities.

37. Roadside is thus liable under 15 U.S.C. § 1125(a)(1) for its past and continuing false or misleading descriptions or representations of fact.

38. Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to recover their actual damages and/or Roadside's profits from sales of the Accused Knives and/or any materially

altered Case-branded knives that Roadside previously sold – which are unjust and illicit gains – as well as the costs of this action.

39. As alleged above, and in particular in paragraph 31, Roadside's use of the Asserted Trademarks was and is intentional and in bad faith. Roadside's intentional use and bad faith justify an award of enhanced damages under 15 U.S.C. § 1117(b) in an amount up to three times actual damages.

40. Because this is an exceptional case under 15 U.S.C. § 1117(a)(3), Plaintiffs should be awarded their reasonable attorneys' fees.

41. In addition, because Plaintiffs' remedies under 15 U.S.C. § 1117(a) are not sufficient to fully protect their continuing interest in preserving the Asserted Trademarks against future infringements by Roadside and those with whom or which it is in active concert, Plaintiffs are entitled to an injunction against the future use of the Asserted Trademarks. Plaintiffs are also entitled to an injunction prohibiting any other infringing use by Roadside.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment as follows:

1. That Roadside be directed to account for and pay to Plaintiffs all damages suffered by them as a result of Roadside's infringement alleged above, as well as to account for all gains, profits and advantages derived by such wrongful conduct;

2. That such damages caused by Roadside be trebled in accordance with 15 U.S.C. § 1117 because its unfair acts were done intentionally and therefore warrant enhanced damages and/or punitive damages as the Court may find appropriate;

3. For a permanent injunction pursuant to 15 U.S.C. §§ 1116 and 1125(c) restraining Roadside, its affiliates, franchises, and subsidiaries, and those in active concert with them from

doing, abiding, causing, aiding or abetting the sale or offering for sale the Accused Knives and any other materially altered Case-branded knives.

4. That Plaintiffs be awarded their attorneys' fees and costs under 15 U.S.C. § 1117;

5. That Plaintiffs be awarded prejudgment interest on any judgment amount;

6. That Plaintiffs be awarded post-judgment interest on the foregoing sums at the maximum rate permitted by law from the date judgment is entered until paid; and

7. That Plaintiffs be awarded such other and further relief as the court deems equitable, just and appropriate.

## JURY TRIAL DEMANDED

Plaintiffs respectfully demand a jury trial on all issues so triable.

Dated: April 27, 2017

OF COUNSEL

David S. Elkins (Cal. Bar No. 148077)
Joseph P. Grasser (Cal. Bar No. 255156)
SQUIRE PATTON BOGGS (US) LLP
620 Hansen Way
Palo Alto, California 94304
Tel: +1 (650) 856-6500
Fax: +1 (650) 843-8777
David.Elkins@squirepb.com
Joseph.Grasser@squirepb.com

Respectfully submitted,

METZ LEWIS BRODMAN MUST O'KEEFE LLP

By: /s/Brian T. Must
Brian T. Must (PA Bar No. 49657)
535 Smithfield Street, Suite 800
Pittsburgh, PA 15222
Tel: +1 (412) 918-1000
Fax: +1 (215) 918-1199
Email: bmust@metzlewis.com

Attorneys for Plaintiffs
W.R. CASE & SONS CUTLERY COMPANY and
CASEMARK, INC.

014-3574-1198/3/EUROPE

- 11 -